IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **RANDILEAH RUTH THORN,** § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 7:21-cv-00093-O-BP |
| § | |
| **COMMISSIONER OF SOCIAL SECURITY,** § § § | |
| Defendant. § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Randileah Thorn seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this action **with prejudice**.

**I.    STATEMENT OF THE CASE**

Thorn seeks disability benefits under Title XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 10-1 at Tr. 17, 345. She applied for supplemental security income ("SSI") in June 2017. *Id.* at 345. Her application reported disability due to four conditions: (1) seronegative rheumatoid arthritis, (2) neck pain, (3) trigger finger of right hand, and (4) inflammatory polyarthropathy. *Id.* at 375. The Commissioner initially denied Thorn's application, *id.* at 155-72, but the Social Security Appeals Council ("AC") granted her request for administrative review. *Id.* at 173. On review, the AC determined the evidentiary record was too

sparse to support the administrative law judge's ("ALJ's") determination. In relevant part, the AC noted:

> In a correspondence dated July 31, 2018, the claimant through her representative requested an updated medical evaluation and medical opinion. The [ALJ] denied the request. The claimant's medical record is minimal. The hearing decision is dated January 11, 2019. The record contains no medical evidence after August 28, 2017. The [AC] concludes further evidentiary development is necessary to evaluate the claimant's disability.

*Id.* at 175. The AC remanded Thorn's case with instructions for the ALJ to conduct supplemental hearings and obtain additional evidence regarding Thorn's inflammatory arthritis. *Id.* at 175-76.

The ALJ conducted the supplemental hearings, *id.* at 17, and denied Thorn's claim again. *Id.* at 17-32. After the AC denied further administrative review (*id.* at 1), Thorn filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review."). She raises a single issue on appeal, challenging whether substantial evidence supports the ALJ's determination that jobs exist in significant numbers she can perform despite her limitations. *See* ECF No. 15.

## II.   STANDARD OF REVIEW

Title XVI of the SSA governs the SSI benefits program. 42 U.S.C. §§ 1381-1383f. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical

or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th

Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

The ALJ complied with the AC's remand order. To obtain further evidence regarding Thorn's inflammatory arthritis, the ALJ "requested that SSA arrange for the State agency to pay for a consultative examination to be performed by an inflammatory arthritis specialist and have that specialist prepare a written report . . . as well as a medical source statement of the claimant's ability to perform work related activities." Tr. 17. After obtaining that evidence, the ALJ conducted a supplemental hearing on Thorn's claim. *Id.* After the hearing, the ALJ conducted the sequential evaluation. At step one, he found Thorn had not engaged in substantial gainful activity since June 2017. *Id.* at 19. At step two, he found Thorn had two severe impairments: (1) inflammatory (rheumatoid) arthritis, and (2) right-hand Dupuytren's contracture. *Id.* At step three, he determined

Thorn's impairments do not meet those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 21.

Before proceeding to step four, the ALJ assessed Thorn's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium exertion work as defined in 20 C.F.R. § 416.967(c), except [she] can occasionally lift and carry fifty pounds and frequently lift and carry ten pounds. The claimant can sit continuously without interruption for four hours. The claimant can walk continuously without interruption for two hours. In an eight-hour workday, the claimant can sit for a total of eight hours. In an eight-hour workday, the claimant can stand for a total of eight hours. In an eight-hour workday, the claimant can walk for a total of four hours. The claimant does not require a cane to ambulate. The claimant can continuously reach in all directions (including overhead reaching) bilaterally. With the right hand, the claimant can frequently push and pull . . . [and] occasionally handle, finger, and feel. The claimant is right hand dominant. The claimant can continuously operate foot controls bilaterally. The claimant can continuously balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, and scaffolds. The claimant has no hearing or vision limitation or restriction. The claimant can frequently be exposed to an environment with unprotected heights . . . moving mechanical parts, operating a motor vehicle, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. The claimant can be exposed to very loud (jackhammer) noise. The claimant can perform activities like shopping. The claimant can ambulate without using a wheelchair, walker, two canes, or two crutches [and] . . . can walk a block at a reasonable pace on rough or uneven surfaces. The claimant can use standard public transportation. The claimant can climb a few steps at a reasonable pace with the use of a single handrail. The claimant can prepare a simple meal and feed herself [and] . . . take care of her personal hygiene. The claimant can sort, handle, or use paper/files. The claimant has no other limitations or restrictions.

*Id.* at 21-22 (cleaned up). The ALJ expedited the process at step four, declining to make a determination of Thorn's PRW and instead proceeding directly to step five. *Id.* at 30 ("An analysis of the claimant's past relevant work is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," regardless of whether the claimant has any past relevant work.").

At step five, the ALJ considered Thorn's age, education, and RFC and determined "jobs [] exist in significant numbers in the national economy that the claimant can perform." Tr. 31. By way of example, the ALJ relied on vocational expert ("VE") testimony which suggested Thorn can

work as a School Bus Monitor (20,000 jobs nationally); Counter Clerk (1,700 jobs nationally); or Usher (4,000 jobs nationally). *Id.* Because Thorn can work these and other jobs despite her medical impairments, the ALJ found her not disabled at step five. *Id.* at 31-32. Thorn disagrees, asserting error in the ALJ's step-five analysis. Specifically, she contends "[t]he ALJ's step 5 denial is not supported by substantial evidence because the ALJ did not properly evaluate whether a significant number of jobs exist that Plaintiff can perform despite her limitations." ECF No. 15 at 1. Finding no error, the undersigned disagrees.

### A. The ALJ applied correct legal standards at step five.

This Court's review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. For the first inquiry, the undersigned sees no indications the ALJ deviated from applicable legal standards at step five, the only step in his analysis Thorn challenges. If a claimant makes it past the first four steps, which Thorn did here, the burden shifts to the Commissioner to prove the claimant's employability. *Audler*, 501 F.3d at 448; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ carried that burden.

To be disabling, an impairment must prevent a claimant from obtaining gainful employment considering her RFC, age, work experience, and education. 20 C.F.R. § 404.1520(a)(4)(v). To find a claimant non-disabled, the Commissioner must show there is a "significant number of jobs" available for the claimant within the national economy. *Crowley*, 197 F.3d at 197-98. Neither the Northern District of Texas nor the Fifth Circuit has endorsed a bright-line rule for what constitutes a "significant" number of jobs. *See, e.g.*, *Jackson v. Berryhill*, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *rec. adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined

what constitutes a 'significant number' of jobs."); *Dominguez v. Astrue*, 286 F. App'x 182, 188 (5th Cir. 2008) (describing the analysis as based on "common-sense"). Here, the ALJ relied on VE testimony in concluding Thorn could work a significant number of jobs, referencing three different positions that collectively represent 25,700 available jobs in the national economy. Tr. 31; *see also* 20 C.F.R. § 416.966(e) (noting ALJs may rely on VE testimony when making this determination).

Thorn says this figure is unreliable for reasons discussed in the next section. However, that figure's reliability notwithstanding, Thorn suggests 25,700 jobs is not "significant" even if the figure was reliable. *See* ECF No. 15 at 5-7. While she acknowledges no brightline rule governs the "significant jobs" analysis, she contrasts several cases in arguing the 25,700 figure is too low. *Id.* at 6. Among the cases she cites, the lowest figure found to represent "significant" jobs came from *Lirley v. Barnhart*, 124 F. App'x 283 (5th Cir. 2005) (finding 50,000 jobs represented significantly available employment), and the highest figure found to not represent "significant" jobs came from *Nolte v. Saul*, No. 7:20-cv-00080-M-BP, 2021 WL 1379552 (N.D. Tex. Mar. 16, 2021), *rec. adopted*, 2021 WL 1378777 (N.D. Tex. Apr. 12, 2021) (finding 14,000 jobs did not represent significantly available employment). Using those two points to frame the analysis and ignoring variance outside that parameter, the undersigned still concludes the ALJ's conclusion here represents "significant" jobs.

The Commissioner rightly notes that "nothing in *Lirley* suggests that the Fifth Circuit intended to set 50,000 jobs as the floor. Indeed, establishing a floor would contradict the Court's common-sense approach to determining a significant number." *See* ECF No. 16 at 4. The Commissioner is correct that nothing in that case could even remotely be construed as setting a floor or even providing a normative baseline for subsequent cases. *See Lirley*, 124 F. App'x at 283-85. For her vehement insistence that a total of 25,700 jobs is not "significant" under the Fifth

Circuit's case law, *see* ECF No. 15 at 4-8, Thorn presents no case purporting to set a standard explicitly precluding such a figure. Indeed, her referenced cases of choice seem to represent clear extremes: she references cases where 1,380,000 jobs, 136000 jobs, and 50,000 jobs were all found to be "significant" numbers. *See* ECF No. 15 at 6. While the Fifth Circuit has no singular test, such figures would assuredly represent "significant jobs" under the case-by-case "common sense" approach. Courts here and elsewhere have found numbers *far lower* to be "significant." *See, e.g.*, *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding 1,350 local jobs significant); *Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1988) (finding 200 local and 10,000 jobs nationally significant); *Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001 2001) (finding 500 jobs in Texas and 5,000 nationwide significant); *Jackson*, 2017 WL 4457539, at *3 (finding 1,897 jobs nationally significant). Applying the "common-sense" approach endorsed in the Fifth Circuit and noting the VE's well-explained testimony, the undersigned sees no error that would warrant reconsideration of the ALJ's employability findings. *See Dominguez*, 286 F. App'x at 188. Indeed, the instant case involves a job approximation of 25,700, which is almost *double* the approximation deemed insufficient in *Nolte*, 2021 WL 1379552, at *4. Considering the substantial difference between those figures, a different outcome seems fitting.

In reaching his "significant jobs" conclusion, the ALJ relied on expert testimony and other evidence of record, explaining his analysis as follows:

> If the claimant had the [RFC] to perform the full range of medium work, Medical-Vocational Rule 203.25 would direct a finding of "not disabled." However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative light, unskilled (SVP 2) occupations such as a School Bus Monitor, DOT # 372.667-042, with 20,000 jobs existing nationally, as a Counter

>Clerk, DOT # 249.366-010, with 1,700 jobs existing nationally, and as an Usher, DOT # 344.677-014, with 4,000 jobs existing nationally.

Tr. 31. While Thorn insists the ALJ failed to investigate facts "both for and against" her disability claim, ECF No. 15 at 7, the ALJ specifically inquired as to how certain of Thorn's conditions would prohibit her from performing other jobs within the national economy. Tr. 109-110. Because the ALJ did not accept the VE's job numbers at face value, but inquired further as to why Thorn was precluded from working certain jobs, he applied correct legal standards and did not err as Thorn suggests. *See Carey v. Apfel*, 230 F.3d 131, 140 (5th Cir. 2000) (affirming where "the ALJ prudently asked the [VE] to directly address the effect of [the claimant's] condition on his ability to perform the identified jobs"). Considering the ALJ conducted the appropriate step-five analysis, relied on expert testimony and the evidentiary record as a whole, and explained his findings robustly, the undersigned concludes he applied correct legal standards and should not be second guessed in that regard.

### B.    Substantial evidence supports the ALJ's step-five determination.

As noted above, the Court may only ask whether the Commissioner applied correct legal standards and whether substantial evidence supports the Commissioner's decision. *Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. Having established the ALJ applied correct legal standards to the step-five analysis, the Court must now ask whether substantial evidence supports the conclusions reached. Even if the ALJ applied correct legal standards, the Court must reverse the decision in the absence of substantial evidence. *See Boyd*, 239 F.3d at 704. Courts find substantial evidence where "a reasonable mind" could accept the evidentiary record "to support [the Commissioner's] conclusion." *Ripley*, 67 F.3d at 555. Having reviewed the record and the ALJ's findings, the undersigned concludes a reasonable mind could accept the evidence furnished to

support the conclusion that significant numbers of jobs exist within the national economy for Thorn to perform given her physical limitations.

Thorn voiced skepticism over the VE's testimony with respect to the availability of jobs she could perform given her medical impairments. ECF No. 15 at 4-5. She says no substantial evidence supports the finding that 25,700 jobs exist for her nationwide because the VE observed that 72% of bus monitors nationwide work on a part-time basis. ECF No. 15 at 4 (discussing Tr. 108-09). Reducing the 20,000 bus monitor jobs total by 72%, Thorn contends substantial evidence only supports a finding that 5,600 such jobs exist nationwide. *Id.* She thus contends substantial evidence only supports a finding that 11,300 jobs exist for her nationally, a far cry from the ALJ's 20,000 jobs figure and a number almost assuredly short of "significant" under the Fifth Circuit's case law discussed above. *Id.* at 4-5.

Thorn's argument seeks to manufacture confusion where the record reflects none. At the start of questioning, the ALJ told the VE "[r]emember, [your answer] has to meet everything. It has to meet the vocational profile as well as the specific functional abilities and limitations I give you." Tr. 108-09. The VE voiced understanding, *id.* at 109, and said of the 20,000 jobs figure for bus monitors: "The job I gave you, the school bus monitor, for this particular one I only selected the full time jobs. Of course, there are several part time jobs, which is 72%. But I only gave those with the full-time jobs." *Id.* at 109. Considering the VE's clarity on this matter, the undersigned disagrees with Thorn's assertion that "[t]he VE's testimony is at best muddled as to this point." *See* ECF No. 15 at 4. Perceived ambiguities aside, Thorn does not show specific insufficiencies in the ALJ's data or the VE's testimony and does not present any countervailing evidence proving she cannot perform the referenced jobs or other similar positions. Because "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices . . . support the

decision," *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417), the undersigned concludes such a finding is inapposite here. This Court has found that 1,897 jobs nationwide was "significant" under the Fifth Circuit's case-specific approach. *Jackson*, 2017 WL 4457539, at *3. Substantial evidence clearly supports the ALJ's determination here, which found 25,700 jobs available in the national economy for Thorn. For these reasons, Judge O'Connor should affirm the Commissioner's decision.

## IV.   CONCLUSION

The ALJ applied correct legal standards at step five of the sequential evaluation, and substantial evidence supports his conclusion that jobs exist in significant numbers nationwide that Thorn can perform. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this action **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on June 3, 2022.

                                                  Hal R. Ray, Jr.
                                                  UNITED STATES MAGISTRATE JUDGE